**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **CHAMBERS OF**<br>**TIMOTHY J. SULLIVAN**<br>**UNITED STATES MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>**(410) 962-4560**<br>**Fax (410) 962-3630** |

October 20, 2015

LETTER TO COUNSEL:

RE:     *Shermika Whitfield v. Carolyn W. Colvin, Acting Commissioner of Social Security*
        Civil No. TJS-14-3197

Dear Counsel:

On October 10, 2014, the Plaintiff, Shermika Whitfield ("Ms. Whitfield"), petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 16 & 19.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF Nos. 3 & 7.) I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Acting Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

Ms. Whitfield filed her application for DIB and SSI on June 8, 2011. (Tr. 186-97.) Ms. Whitfield claimed alleged disability beginning on May 31, 2011. (Tr. 222.) The claim was denied initially and on reconsideration. (Tr. 110-14, 125-31.) A hearing was held before an Administrative Law Judge ("ALJ") on August 13, 2013. (Tr. 35-73.) On August 30, 2013, the ALJ determined that Ms. Whitfield was not disabled under the Social Security Act as she retained the residual functional capacity ("RFC") to perform her past relevant work, as well as jobs that exist in significant numbers in the national economy. (Tr. 18-34.) On September 22, 2014, the Appeals Council denied Ms. Whitfield's request for review (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ evaluated Ms. Whitfield's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Ms. Whitfield was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since May 31, 2011. (Tr. 20.) At step two, the ALJ found that Ms. Whitfield suffered from the severe impairments of "HIV infection, obesity (BMI of 32), and bipolar disorder." (Tr. 21.) At step three, the ALJ found that Ms. Whitfield's impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set

forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings") (Tr. 21-23.) The ALJ determined that Ms. Whitfield has the RFC

> to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except the claimant is further limited to: carrying out simple tasks in 2-hour increments (which can be accommodated by regularly scheduled breaks); having occasional interaction with coworkers, supervisors, and the general public; and adapting to simple changes in a routine work setting.

(Tr. 23.)

At step four, the ALJ determined that Ms. Whitfield is able to perform past relevant work as a housekeeper and janitor. (Tr. 27.) In addition, the ALJ made an alternative finding at step five that Ms. Whitfield could perform jobs that exist in significant numbers in the national economy, including "vehicle washer," "counter supply worker," and "kitchen helper." (Tr. 29.) Therefore, the ALJ found that Ms. Whitfield was not disabled under the Social Security Act. (*Id.*)

Ms. Whitfield presents three arguments on appeal, which I have reordered as follows: (1) that the ALJ improperly weighed evidence of Ms. Whitfield's IQ; (2) that the ALJ's RFC finding is not supported by substantial evidence; and (3) that the ALJ improperly considered Ms. Whitfield's past employment as a housekeeper and a janitor as past relevant work. (ECF No. 16-1.) I will address each of these arguments in turn.

Ms. Whitfield first argues that the ALJ did not give proper weight to an IQ test result that indicated a full scale IQ of 61.[1] (*Id.* at 13-15.) An ALJ is permitted to weigh conflicting IQ test results and to reject an IQ test result "even if it is the only such result in the record." *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012). If an ALJ rejects an IQ test result, the ALJ must explain why the result was rejected. *See Edge v. Astrue*, 627 F. Supp. 2d 609, 613 (E.D.N.C. 2008). An ALJ can consider any relevant factor in deciding what weight should be given to an IQ test result. *See, e.g. Mazan v. Comm'r, Soc. Sec.*, No. CCB-13-1831, 2014 WL 1884506, at *2 (D. Md. May 8, 2014) ("[T]he ALJ assigned little weight to Dr. Ansel's IQ score and opinion, noting that Dr. Ansel had been erroneously informed that Ms. Mazan had special education in school, when in fact she was in a regular education program, that Ms. Mazan provided contradictory information regarding whether she or her daughter completed her function report and work report, that Ms. Mazan successfully worked part-time for many years, that Ms. Mazan effectively used public transportation to travel through the community, and that Dr. Ansel failed to provide an explanation or analysis for his conclusions."); *Nance v. Astrue*, No. TMD-08-2899, 2010 WL 2039039, at *2 (D. Md. May 20, 2010) ("Here, the ALJ acknowledged Dr. Ansell's IQ test score, but assigned it very little weight. He did so because it was based on 'false' information by Claimant; specifically, that he attended special education classes.").

---

[1] On July 19, 2013, Dr. Ansel administered the Wechsler Adult Intelligence Scale (Fourth Edition) ("WAIS-IV"). (Tr. 638.) According to Dr. Ansel's test, Ms. Whitfield is in the "Extremely Low range of intelligence," and her full scale IQ of 61 places her in the lowest 0.5% of her age group. (Tr. 640.)

In reviewing an ALJ's decision, it is not this Court's role to reweigh the evidence or substitute its judgment for that of the ALJ. Instead, this Court's role is to determine whether the ALJ's decision is supported by substantial evidence. Here, the ALJ provided a clear explanation of her rejection of Dr. Ansel's IQ test result, and there is substantial evidence in the record to support that decision. First, the ALJ noted the problems with Dr. Ansel's report itself: it was based on a one-time exam, and his explanations of his opinions were non-detailed and conclusory. (Tr. 21-22, 26-27.) For example, Dr. Ansel diagnosed Ms. Whitfield with "panic disorder with agoraphobia," but there is no evidence in the record to support such a diagnosis and no explanation as to how he made the diagnosis. (Tr. 27, 641.) In the same way, Dr. Ansel's diagnosis of "probable dementia due to HIV disease" is unsupported. (Tr. 640-41.) Dr. Ansel's report appears to explain the reason for this conclusory diagnosis: "She was diagnosed as HIV positive eight years ago and this is certainly long enough ago for onset of HIV dementia." (*Id.*) Second, the ALJ explained how the IQ score was inconsistent with the rest of the record. Just as in *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998), which is cited with approval by *Hancock*, the rejected IQ score is incompatible with Ms. Whitfield's functional abilities. There is substantial evidence in the record that demonstrates Ms. Whitfield's abilities to live independently, take care of her child, assist family members with medical appointments, cook, clean, shop, pay bills, handle money, and take public transportation without assistance.[2] (Tr. 21, 24-25, 54, 56-59, 254, 256-57.) Given the breadth of the evidence suggesting that the IQ score was not indicative of Ms. Whitfield's actual abilities, the ALJ's rejection of the IQ score as unreliable is supported by substantial evidence.

Ms. Whitfield's second argument is that the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 16-1 at 16.) RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96–8p, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ must consider even those impairments that are not "severe" in formulating the RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the

---

[2] Ms. Whitfield also argues that the ALJ improperly used her educational records to debunk Dr. Ansel's IQ test result. (ECF No. 16-1 at 14-15.) I do not find that the ALJ committed any such error. In her step three analysis, the ALJ found that "even assuming for the sake of argument that Dr. Ansel's IQ scores are valid," Ms. Whitfield did not meet Listing 12.05 because the record does not establish an onset of the impairment before age 22." (Tr. 21.) In addition, Dr. Ansel himself expressed doubt about whether she had functioned in the "mildly mentally retarded range. . . since the developmental period" because her educational records indicated a "rather variable" academic performance. (Tr. 640.) Finally, Ms. Whitfield does not argue in her motion that she actually meets Listing 12.05. Instead, she contends that the ALJ should have credited Dr. Ansel's IQ score in the interest of getting a longitudinal picture of Ms. Whitfield's mental impairments over time. (Tr. 15.)

claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id*. The ALJ must also assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96–7p, 1996 WL 374186 (S.S.A. July 2, 1996).

Ms. Whitfield contends that because the ALJ formulated the RFC without taking into account the limitations indicated by Dr. Ansel's report, the RFC does not adequately represent her limitations. (ECF No. 16-1 at 16.) I have already found that the ALJ properly rejected Dr. Ansel's opinion regarding Ms. Whitfield's IQ. For similar reasons, I find that the ALJ properly rejected Dr. Ansel's opinion regarding Ms. Whitfield's GAF.[3] The ALJ explained that she gave "no weight to Dr. Ansel's GAF score of 35, as it is contradicted by the record evidence as a whole . . ., as well as Dr. Kimmel's mental status findings and evaluation of the claimant." (Tr. 26.) Dr. Kimmell treated Ms. Whitfield beginning in March 2013, and prepared the report on which the ALJ relied in May 2013. At this point, Dr. Kimmell had met with with Ms. Whitfield on eight occasions. (Tr. 619-37.) The ALJ gave "great weight" to Dr. Kimmell's report because

---

[3] The Global Assessment of Functioning ("GAF") scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. *Johnson v. Astrue,* No. TMD-10-947, 2011 WL 5149574 at *2 (D. Md. Oct. 27, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed.). A GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning" at the time of the evaluation. *White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009); *see also Green v. Astrue*, No. 10-1840-SVH, 2011 WL 1770262 (D.S.C. May 9, 2011). The use of GAF scores has been discontinued in the DSM–V, in part because of a lack of conceptual clarity. *Clemins v. Astrue*, No. 13-0047, 2014 WL 4093424, at *26 (W.D. Va. Aug. 18, 2014) (citing American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). In addition, as other courts have noted, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)); *see also Melgarejo v. Astrue*, No. JKS-08-3140, 2009 WL 5030706, at *2 (D. Md. Dec. 15, 2009). To the extent that they are considered, GAF scores range from 100 to 1, with lower scores indicating that the person is a danger to themselves or others, and higher scores indicating that the person has no symptoms to indicate problems in functioning:

> A GAF score of 31–40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. . . . A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*Haines v. Astrue*, No. SAG-10-0822, 2012 WL 94612, at *2 (D. Md. Jan. 10, 2012) (quoting *White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009)).

"it is consistent with the record evidence as a whole, including her own detailed history, and the mental status findings on examination." (Tr. 26.) Ms. Whitfield's own report of "liking school, being the center of her family, being responsible for her family, and having a strong desire to be a good mother," along with her report of her past employment experiences, supports Dr. Kimmell's finding that she had only moderate symptoms and limitations. (Tr. 26.) In addition to the May 2013 report, Dr. Kimmell's progress notes regarding Ms. Whitfield's treatment are detailed and extensive. (Tr. 622-637.) The ALJ's rejection of Dr. Ansel's opinion as to Ms. Whitfield's GAF is supported by substantial evidence.[4]

Ms. Whitfield's third argument is that the ALJ improperly considered Ms. Whitfield's jobs as a housekeeper and a light janitor as past relevant work. (Tr. 10-12.) At step four of the sequential evaluation process, the ALJ found that Ms. Whitfield could perform her past relevant work as a housekeeper or light janitor. Past relevant work is work that a claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560, 416.960. The regulations define substantial gainful activity:

> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. §§ 404.1572, 416.972. The "primary consideration" in determining whether work is substantial gainful activity is the amount of earnings a person derives from the work. 20 C.F.R. § 404.1574(a)(1). However, if a person is unable to work for a period longer than six months because of their impairment, the work is considered an "unsuccessful work attempt." 20 C.F.R. § 1574(c)(1).

The ALJ found that Ms. Whitfield earned $2,420 working as a housekeeper in 2000, $1,508 as a janitor in 2003, and $1,891 as a janitor in 2004. (Tr. 28.) Ms. Whitfield states that she "worked less than 3 months [in 2000] as a housekeeper" and her job as a janitor was "not full time and was also less than three months." (ECF No. 16-1 at 11.) The reason that Ms. Whitfield has so many brief employment stints, she argues, is that "her mental limitations lead to frustration and her inability to continue working." (*Id.* at 12.) She goes on to argue that "attempted work at forty different jobs in ten years is considerable evidence that she is 'incapable of performing work for sustained periods.'" (*Id.*)

---

[4] Because the ALJ's RFC finding is supported by substantial evidence, the ALJ's incorporation of the RFC into a hypothetical question for a vocational expert was not improper. I reject Ms. Whitfield's argument to the contrary. (*See* ECF No. 16-1 at 17.)

I will assume for the sake of argument that Ms. Whitfield's previous jobs as a housekeeper and a light janitor do not constitute past relevant work because they were either unsuccessful work attempts, or they did not produce substantial enough earnings. However, even if the ALJ's finding at step four is set aside, her alternative finding at step five is supported by substantial evidence. At step five, the ALJ asked a vocational expert ("VE") a hypothetical question that fairly set forth Ms. Whitfield's limitations:

> [W]e have a claimant here who is currently 31 years of age. She completed the tenth grade and she has had some special education. But for our purposes we just have tenth grade, we just need to talk about limited education. Let's see, and the first hypothetical is as follows. Please assume that the claimant is limited to a medium exertional capacity. From a mental stand point she can carry out simple tasks in two hour increments. She can have occasional interaction with coworkers, supervisors, and the general public. And she can adapt to simple changes in a routine work setting.

(Tr. 69.)

The ALJ asked the VE whether, if the hypothetical individual "couldn't do any of her past work," she could nonetheless "do any other work in the national economy?" (Tr. 70.) The VE responded in the affirmative and listed several jobs that exist in significant numbers in the national economy that a person of Ms. Whitfield's functional capacity could perform. (*Id.*) The ALJ relied on the VE's testimony and found that, considering Ms. Whitfield's "age, education, work experience, and residual functional capacity, [she] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 29.) The ALJ's step five determination is supported by substantial evidence.

For the reasons set forth herein, Ms. Whitfield's Motion for Summary Judgment (ECF No. 16) will be DENIED, and the Commissioner's Motion for Summary Judgment (ECF No. 19) will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

_____/s/_____

Timothy J. Sullivan
United States Magistrate Judge

6